1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  TEFIDA, ZAO, and MARINE FISHING
    INTERNATIONAL, INC.,                          IN ADMIRALTY

11

12              Plaintiffs,                       NO. 2:13-cv-00464-RSM

13      v.                                        ORDER DENYING MARINE
                                                  TREASURE'S MOTION TO VACATE
14  1,925 CARTONS OF CRAB, and                    ARREST AND ATTACHMENT
    ALYE PARUSA LIMITED LIABILITY
15  COMPANY,

16              Defendants.

17

18                    I.       INTRODUCTION

19      On March 15, 2013, the Court ordered the arrest and attachment of *in rem*

20  Defendant 1,925[1] Cartons of Crab (the "Crab") by the United States Marshals Office upon

21  the *ex parte* motion of Plaintiffs Zao, Tefida ("Tefida") and Marine Fishing International,

22  Inc. ("MFI"). Dkt. # 12. Marine Treasures, Inc. ("Marine Treasures") moved to intervene

23

24  in this admiralty action to contest rightful ownership of the Crab. The Court granted the

25  _____
    [1] The original number of cartons was 1,925. Once the Crab was in custodial possession,
    Plaintiff Tefida discovered fourteen additional cartons and moved the Court to arrest those
26  as well. Dkt. ## 16-18, 19-20.

ORDER DENYING MARINE TREASURE"S
MOTION TO VACATE ARREST AND
ATTACHMENT - 1

motion to intervene and set a hearing to give Marine Treasures the opportunity to contest

the propriety of attachment and arrest of the Crab, as provided for under Fed. R. Civ. P.

Supp. R. E(4)(f). The Court held the Rule E hearing on July 30, 2013, wherein Marine

Treasures moved to vacate the arrest and attachment. For the reasons that follow, Marine

Treasures' motion to vacate shall be DENIED.

## II.     BACKGROUND

Tefida, a company formed under the laws of the Russian Federation, and MFI, a

Nevada corporation, brought suit against the Crab, *in rem*, and against Alye Parusa LLC

(Alye) *in personam*, under Rules B and D of the Supplemental Rules for Admiralty or

Maritime Claims and Asset Forfeiture Actions, and Fed. R. Civ. P. 9(h). Tefida claims that

it is the rightful owner of 1,353 cartons of Crab pursuant to a Time Charter agreement with

Alye. MFI claims that Alye is in breach of an agency agreement, which entitles it to attach

the remaining 586 cartons of Crab as an asset of Alye to be sold to satisfy Alye's contract

obligation. Dkt. # 16. Alye has not appeared in this action.

Plaintiffs' Verified Amended Complaint (Dkt. # 16) alleges the facts as follows:

Alye owns a fishing vessel that it operates in the territorial waters of the Russian

Federation. It contracted with Tefida to harvest and produce crab products in the Sea of

Okhotsk on the vessel SAVELOVO between January 1 and February 1, 2013. On or about

February 1, 2013, Alye executed a bill of lading to transfer roughly 1,925 cartons of frozen

crab products to the cargo vessel ODIN, which was bound for Vladivostok. On or about

February 13, 2013, Alye and its Korean-based broker and marine agent Atlas Marine Co.,

ORDER DENYING MARINE TREASURE"S
MOTION TO VACATE ARREST AND
ATTACHMENT - 2

1   Ltd. ("Atlas Marine") executed a series of bills of lading to ship the Crab to Busan, Korea

2   aboard the ODIN.

3       On or about March 7, 2013, Atlas Marine executed a bill of lading to ship the Crab

4   to Seattle aboard the APL BELGIUM, to satisfy a sales contract with Marine Phoenix

5   LLC, a Bellevue, Washington company. Tefida and MFI state that, on information or

6   belief, title to the Crab had not transferred to Marine Phoenix, and that legal or beneficial

7   ownership of the crab remained with Alye. Dkt. # 16, ¶ 3.6.

8   

9       Marine Treasures timely moved to intervene after the USMO posted the notice of

10  arrest and attachment. It claimed that it is the rightful owner of the Crab under two

11  February 25, 2013 sales contract, and that Tefida has misrepresented its interest in the

12  Crab. Marine Treasures contends that the Crab was purchased and re-sold through a series

13  of transactions that occurred in February 2013. It contends that Marine Phoenix obtained

14  ownership of the Crab pursuant to a February 19, 2013 sales contract (Dkt. # 21-2, p. 57);

15  that Marine Phoenix transferred ownership of the Crab to Asia Seafood Inc. pursuant to a

16  purchase contract dated February 20, 2013 (Dkt. # 21-2, p. 59); that Asia Seafood Inc.

17  transferred ownership of the Crab to its parent company, ASI ehf ("ASI"), pursuant to two

18  sales contracts dated February 22, 2013 (Dkt. #21-2, pp. 61, 63); and that ASI then

19  transferred ownership of the Crab to Marine Treasures on February 25, 2013 pursuant to

20  two sales contracts (Dkt. # 21-2, pp. 8, 10).

21  **A. Tefida's Interest:**

22      Tefida alleges that it entered into a Time Charter Agreement (the "TCA") with

23  Alye on December 20, 2012 to harvest and produce frozen crab products. Dkt. # 16, ¶ 4.2.

24  

25  

26  

ORDER DENYING MARINE TREASURE"S
MOTION TO VACATE ARREST AND
ATTACHMENT - 3

1   Under the TCA, Tefida chartered Alye's vessel to harvest and produce its commercial

2   fishing "quota." The TCA further states that all finished product produced by Alye during

3   the period of the agreement, is the property of Tefida. The term identified is January 1

4   through December 1, 2013. Dkt. # 10-2, ¶ 2.1 (English translation provided). Tefida's *in*

5   *rem* claim arises from Alye's obligation to give Tefida the finished Crab in performance of

6   the TCA. Tefida contends that Alye converted 1,353 of the cartons of crab at issue, which

7   rightfully belong to Tefida.

8   

9   **B.  MFI's Interest:**

10          MFI entered into an Agency Agreement with Alye in January of 2011. Dkt. # 16, ¶

11  5.1. The Agency Agreement states that MFI shall be responsible for providing sales

12  services of fishery products outside of the Russian Federation. Dkt. # 10-3, 4 (English

13  translation provided). The Agency Agreement further provides that MFI has the exclusive

14  right to sell products caught and/or finished by Alye on three of its fishing vessels,

15  including the SAVELOVO. Dkt. # 10-4, ¶ 1.2. MFI contends that Alye owes (1)

16  $487,409.75 for advances made for the benefit of Alye and/or its vessel and (2)

17  $277,377.44 in agent fees under the terms of the Agency Agreement.

18  **C.  Marine Treasures' Interest:**

19         Marine Treasures claims that it purchased the Crab on February 25, 2013, pursuant

20  to two sales contracts. It contends that although Tefida owned some of the Crab initially,

21  Tefida transferred its ownership interest to Alye via an Agreement to Supply Fish Product

22  dated January 24, 2013 ("Supply Agreement"), two attachments to the Supply Agreement,

23

24

25

26

ORDER DENYING MARINE TREASURE"S
MOTION TO VACATE ARREST AND
ATTACHMENT - 4

1   and two cargo transfer confirmations. Tefida disputes the authenticity and validity of the

2   documents produced by Marine Treasures.

3         Marine Treasures, via affidavit of Alye's president, A.A. Bartolomey, alleges that

4   when Tefida transferred the Crab to Alye's possession pursuant to the Supply Agreement,

5   Tefida relinquished its ownership rights. Mr. Bartolomey states that the Crab was

6   transferred to satisfy Tefida's debt with Alye for charter services. Dkt. # 27-1, p. 6 (¶ 4).

7

8   Tefida contends that the documents that Marine Treasures supplied to the Court were not

9   executed by Tefida or signed by its General Manager, Y.I. Tkachenko. Dkt. # 30, pp. 1-3.

10        At the Rule E hearing, Marine Treasures was afforded the opportunity to challenge

11  the propriety of arrest and attachment. It argued that the Crab should be released to its

12  custody on the grounds that (1) arrest pursuant to Tefida's Rule D motion was wrongful

13  because Tefida voluntarily transferred the Crab to Alye, and (2) attachment pursuant to

14  MFI's Rule B motion was wrongful because Tefida did not own the Crab at the time of

15

16  attachment. The Court addresses each contention in turn.

17                        **III.    DISCUSSION**

18  **A.  Legal Standard**

19        The Procedure for Release from Arrest or Attachment provided for by Rule E(4)(f)

20  states in relevant part:

21

22        Whenever property is arrested or attached, any person claiming an
          interest in it shall be entitled to a prompt hearing at which the
23        plaintiff shall be required to show why the arrest or attachment
          should not be vacated or other relief granted consistent with these
24        rules.

25  Fed. R. Civ. P. Supp. R. E(4)(f).

26

ORDER DENYING MARINE TREASURE"S
MOTION TO VACATE ARREST AND
ATTACHMENT - 5

1   At a Rule E hearing, a claimant may "attack the complaint, the arrest, the security

2   demanded, or any other alleged deficiency in the proceedings." Fed. R. Civ. P. Supp. R. E

3   advisory committee notes (1985 amends.). Plaintiff then bears the burden of justifying

4   continued arrest or attachment. *Equatorial Marine Fuel Management Servs. Pte Ltd. v. . . .*,

5   591 F.3d 1208, 1210 (9th Cir. 2010).

6

7   Although the Ninth Circuit Court of Appeals has not defined the test by which a

8   plaintiff may satisfy the burden of justification, other courts have found that a plaintiff

9   must show that there was probable cause to arrest or attach the property at issue. *See, e.g.*,

10  *Newport News Shipbuilding & Dry Dock Co. v. S.S. Independence*, 872 F. Supp. 262, 265

11  (E.D. Va. 1994).

12

13  In this context, the probable cause standard roughly equates to whether plaintiff can

14  make out a prima facie case. *See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460

15  F.3d 434, 445 (2d Cir. 2006), overruled on other grounds by *Shipping Corp. of India Ltd.*

16  *v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009); *Ronda Ship Mgmt. v. Doha Asian*

17  *Games Organizing Comm.*, 511 F. Supp. 2d 399, 403 (S.D.N.Y. 2007) ("The majority of

18  courts in this district have understood *Aqua Stoli* to require the application of the prima

19  facie standard when considering the adequacy of a claim in a maritime vacatur motion.").

20  In the Ninth Circuit, unpublished district court orders have defined the probable cause

21  standard as requiring "[p]laintiff to demonstrate the evidence shows a fair or reasonable

22  probability that [she] will prevail on [her] claim. *OS Shipping Co. Ltd. v. Global Maritime*

23  *Trust(s) Private Ltd.*, Case No. C11-377-BR, 2011 WL 1750449, at * 5 (D. Or. May 6,

24

25  2011); *see Sea Prestigio LLC v. M/Y/ Triton*, Case No. C10-2412-BTM, 2010 WL

26

ORDER DENYING MARINE TREASURE"S
MOTION TO VACATE ARREST AND
ATTACHMENT - 6

5376255, at * 3 (S.D. Cal. Dec. 22, 2010). The court's role in resolving a vacatur motion is

not to make findings of fact as to the ultimate merits of plaintiffs' claims or to resolve

contested issues between the parties. *OS Shipping*, 2011 WL 1750449, at * 5.  Rather, the

court need only "determine that reasonable grounds exist for the arrest." *Sea Prestigio*,

2010 WL 5376255, at * 3.

**B.  Analysis**

The prima facie case for arrest under Rule D requires a plaintiff to show that it was

entitled to a maritime lien. *Newport News*, 872 F. Supp. at 265. The prima facie case for

attachment under Rule B requires a plaintiff to show that it (1) has a valid prima facie

admiralty claim against the defendant; (2) the defendant cannot be found within the

district; (3) the defendant's property may be found within the district; and (4) there is no

statutory bar to maritime attachment. *See Equatorial Marine*, 591 F.3d at 1210; *Aqua Stoli*,

460 F.3d at 445.

*1.  Propriety of Tefida's Arrest of the Crab*

Marine Treasures contends that Alye did not convert Tefida's Crab because Tefida

transferred the Crab to Alye pursuant to several transfer documents. Tefida claimed that

the transfer documents presented to the Court were not executed by Tefida. Marine

Treasures now contends that it found e-mails that confirm that Tefida voluntarily

transferred the Crab.

At the hearing, Tefida argued that it should not have to rebut Marine Treasures'

factual assertions regarding the meaning or effect of documents and e-mails produced by

Marine Treasures without the benefit of full discovery. The Court agreed and limited the

ORDER DENYING MARINE TREASURE"S
MOTION TO VACATE ARREST AND
ATTACHMENT - 7

scope of evidence and witness testimony accordingly. After further review of the record,

the Court finds that Tefida met its burden to show that reasonable grounds for arrest exist.

First, the documents offered by Marine Treasures, the authenticity of which Tefida

disputes, do not clearly show that the Crab's purported transfer from Tefida to Alye

divested Tefida of its ownership interest in the Crab. Importantly, Marine Treasures did not

argue that Alye paid Tefida as required under the terms of the TCA. Second, Marine

Treasures does not dispute that the TCA is a maritime contract between Tefida and Alye,

nor does it dispute that a breach of the TCA would give rise to a maritime lien. Last,

Marine Treasures' arguments and documentary evidence concern factual disputes

surrounding the legal effect of the Crab's transfer. The Court agrees with Tefida that such

factual disputes are not appropriate for resolution at this time. Because there is no dispute

that Alye's breach of the TCA, as alleged by Tefida, entitles Tefida to a maritime lien

against the Crab, Tefida has met its burden of showing that it is entitled to a maritime lien,

which is all the probable cause standard requires. Accordingly, the Court finds that arrest

was proper.

### 2.   *Propriety of MFI's Attachment of the Crab*

Marine Treasures challenges the propriety of MFI's claim to attachment on one

basis: that the Crab was not Alye's property at the time of attachment. It contends that

because the Crab was transferred to Atlas Marine pursuant to an agency agreement and

then sold to Marine Phoenix before attachment occurred in this district, the Crab was not

Alye's property such that MFI had no viable claim for attachment.

ORDER DENYING MARINE TREASURE"S
MOTION TO VACATE ARREST AND
ATTACHMENT - 8

At this time, the Court is unable to resolve whether the non-Tefida Crab was an asset of Alye at the time of attachment. MFI contends that Alye breached its exclusive Agency Agreement by contracting with Atlas Marine to transship the Crab out of the Russian Federation. Marine Treasures presented numerous documents and testimony purporting to show that Alye had a valid contract with Atlas Marine and that Marine Phoenix executed a purchase agreement prior to the date of attachment. But Marine Treasures failed to address whether the MFI Agency Agreement prevented it from lawfully executing an agreement with Atlas Marine.  The lack of clarity surrounding the effect of the MFI Agency Agreement presents the Court with two possible scenarios. On one hand, if Alye was lawfully able to contract with Atlas Marine to sell the non-Tefida Crab despite its exclusive Agency Agreement with MFI, then the purported February sales transaction with Marine Phoenix likely extinguished Alye's ownership interest. On the other hand, if Alye did not have authority to sell the Crab because of the Agency Agreement with MFI, then Alye may not have transferred good title to any subsequent purchaser. Thus, whether the non-Tefida Crab was an asset of Alye sufficient to support continued grounds for attachment turns on the resolution of factual and legal issues. These issues were neither adequately briefed, nor adequately argued by the parties at the Rule E hearing. Because MFI is not required to prove its case on a vacatur motion and because it appears that factual issues remain unresolved, the Court denies Marine Treasures motion to vacate attachment.

## IV.     CONCLUSION

ORDER DENYING MARINE TREASURE"S
MOTION TO VACATE ARREST AND
ATTACHMENT - 9

1    Having considered Marine Treasure's vacatur motion, the supporting memoranda,

2  the testimony offered at the Rule E hearing, the declarations and attached exhibits, and the

3  remainder of the record, the Court hereby finds and ORDERS:

4    (1) Marine Treasure's Motion to Vacate the Arrest and Attachment of 1,939

5        Cartons of Crab is DENIED.

6

7    (2) The Clerk is directed to send a copy of this Order to all counsel of record.

8

9    DATED this 9th day of August 2013.

10

11

12

13    RICARDO S. MARTINEZ
      UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER DENYING MARINE TREASURE"S
MOTION TO VACATE ARREST AND
ATTACHMENT - 10